**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **CHARLES M. SARAFIN, Individually And** ) | |
| **On Behalf Of All Others Similarly Situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. 3:11-0653** |
| **v.** ) | **Judge Sharp** |
| ) | |
| **BIOMIMETIC THERAPEUTICS, INC.,** ) | |
| **SAMUEL E. LYNCH, and LAWRENCE E.** ) | |
| **BULLOCK,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM</u>

This is an action under the Private Securities Litigation Reform Act ("PSLRA"). On January 10, 2013, this Court entered an Order and Memorandum (Docket Nos. 63 & 64) dismissing with prejudice the Amended Complaint filed by Plaintiff Charles M. Sarafin, on behalf of himself and others who purchased or acquired the common stock of Defendant BioMimetic Therapeutics, Inc. ("BMII"), between October 14, 2009, and May 15, 2011. Judgment in favor of the Defendants was entered that same day.

On February 27, 2013, Plaintiffs filed a Motion to Alter or Amend the Order and Judgment of Dismissal With Prejudice (Docket No. 66). That Motion has been fully briefed by the parties (Docket Nos. 67, 71 and 75), and, for the reasons that follow, will be denied.

## I.

In the Amended Complaint, Plaintiffs alleged that BMTI and two of its top officers, (who are individual Defendants in this case) misled investors concerning the clinical trials it was conducting to obtain FDA approval of its flagship product, Augment™ Bone Graft ("Augment"),

1

as well as the prospects for FDA approval. More specifically, Plaintiffs alleged that BMTI misled investors to believe that it was basing its clinical trials on a "primary" study population approved by the FDA when, in fact, it had not secured any such approval. In this regard, BMTI allegedly engaged in a classic "bait and switch," by utilizing a "modified intent to treat" (mITT) group, instead of using the "intent to treat" population ("ITT") as its "primary" data set as approved by the FDA in the original protocol.

In moving to dismiss, Defendants argued Plaintiffs had failed to allege actionable misstatements of material fact by Defendants and failed to allege scienter. As for the alleged material misstatements in regard to the use of the mITT study population as the FDA approved population, Defendants pointed to a letter dated May 18, 2007, from the FDA to BMTI, arguing that the letter provided a basis for BMTI to believe it had received FDA approval of its use of an mITT population as the "primary" data set. Thus, Defendants could not be liable for making material misstatements to investors regarding use of the mITT as the approved study population.

After the motion to dismiss was fully brief and the Court heard oral arguments from the parties, the Court entered its Order dismissing this case. In the accompanying 33-page Memorandum, the Court focused upon Plaintiffs' central allegation that "BMTI engaged in a 'bait-and-switch,'" but found BMTI did, in fact, have a basis to represent that a modified intent-to-treat population was the primary study population approved by the FDA." (Docket No. 63 at 16). In doing so, the Court pointed out that, in response to a request from the FDA to correct deficiencies identified in a conditional approval letter, BMTI provided a supplement to its IDE application on April 6, 2007, that included a new protocol which revised the definition of the study's ITT population. Thereafter, the FDA issued its May 18, 2007, letter that approved the supplemented

2

protocol, albeit with instructions that BMTI also analyze the true ITT population. The Court went on observe that "BMTI did not hide the ITT patient study results, and acknowledged the confusion which had been generated between the classifications of patient populations," that "[t]he issue of the mITT versus ITT patient population was also the subject of a lot of discussion at a data results conference call between BMTI executives and financial analysts," and that the information before the Court did "not suggest a knowing and deliberate intent to deceive or defraud, let alone highly unreasonable conduct on the part of BMTI" because

> the announced "positive top-line results" were based upon a study population that the FDA had approved; the "near miss" of the strict intent-to-treat (ITT) population was revealed; the confusion about the two study population was openly acknowledged; and BMTI made a pitch for why it believed a mITT population study was more accurate, but acknowledged that the FDA would be looking at everything, including "a true traditional ITT, which basically includes everybody results of the true ITT.

(Id. at 18 & 21-22).

In the ruling, this Court found dismissal with prejudice to be appropriate. In so doing, the Court observed:

> In the last sentence of their response brief, Plaintiffs "request leave to amend the Complaint in the event that the Court finds that it falls short of the applicable pleading standard in any respect." (Docket No. 44 at 35). However, "'a bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a).'" Louisiana Sch. Employees' Retirement Sys., 663 F.3d at 486 (citation omitted). In the absence of a motion under Rule 15, the Court in its discretion may deny leave to amend because Defendants are "'entitled to a review of the complaint as filed pursuant to Rule 12(b)(6)'" and Plaintiffs are "'not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.'" Id. (citation omitted). Accordingly, Plaintiffs will not be granted leave to amend.

(Id. at 32).

**II.**

3

In moving to alter or amend, Plaintiffs argue that this Court erred in two material respects. First, they assert that it was error to reject its request to amend, even in the absence of a formal motion under Rule 15 of the Federal Rules of Civil Procedure. Second, they argue that it would be manifestly unjust to deny their request to amend or alter because the Court relied heavily upon the May 18, 2007, letter of approval, but Plaintiffs were unaware of that letter until Defendants filed their Motion to Dismiss. The Court is unpersuaded by either argument and will not disturb the final judgment that has been entered in this case.

**III.**

"Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." Morse v. McWhorter, 290 F.3d 795, 799 (6th Cir. 2002). In Morse, the Sixth Circuit addressed Rule 15's liberal amendment policy *vis-a-vis* the finality of judgment and in the context of a PSLRA action, writing:

> Generally, leave to amend is "freely given when justice so requires." . . . In the securities litigation context, leave to amend is particularly appropriate where the complaint does not allege fraud with particularity. . . . Denial may be appropriate, however, where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." . . . Ordinarily, delay alone, does not justify denial of leave to amend. . . . At some point, however, "delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." . . . And while Rule 15 plainly embodies a liberal amendment policy, in the post-judgment context, we must also take into consideration the competing interest of protecting the "finality of judgments and the expeditious termination of litigation."

Id. at 799-800 (internal citations and explanatory parenthetical omitted).

Plaintiffs rely on Morse for the proposition that allowing amendments in securities actions

4

is particularly appropriate, but more recent Sixth Circuit cases have further explored the liberal amendment policy in light of the finality of judgments and in light of the PSLRA's requirement that "the court shall, on the motion of any defendant, dismiss the complaint if the [pleading] requirements ... are not met." 15 U.S.C. § 78u-4(b)(3)(A).

In Miller v. Champion Enterprises Inc., 346 F.3d 660 (6th Cir. 2003) the Sixth Circuit approved the district court's observation "that allowing repeated filing of amended complaints would frustrate the purpose of the PSLRA." In doing so, found it "notable" that "in Morse there was no discussion of the heightened pleading requirements of the PSLRA, or even of the PSLRA generally," and that "it is correct to interpret the PSLRA as restricting the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure." Id at 690 & 691.

Subsequently, in PR Diamonds, Inc. v. Chandler, 364 F.3d 671 (6th Cir. 2004), the Sixth Circuit pointed out that, in Miller, it had "considered the tension between Rule 15(a) of the Federal Rules of Civil Procedure and the PSLRA, and noted that "'the purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA,'" with that purpose being (among other things) "to screen out lawsuits having no factual basis, to prevent harassing strike suits, and to encourage attorneys to use greater care in drafting their complaints." Id. at 700 (quoting, Miller, 346 F.3d at 690).

**IV.**

Turning first to the assertion that the Court erred in this case when it failed to allow amendment based upon the one sentence request in the response brief, Plaintiffs argue that the Court "elevated form over substance," an action itself that was contrary to the liberal purposes of Rule 15.

5

Plaintiffs then cite two cases in which district courts allowed amendments where the request for leave to amend was contained in a brief filed in opposition to a motion to dismiss. As for <u>Louisiana Sch. Employees' Retirement Sys.</u>, which is controlling authority and on which this Court relied, Plaintiff argues there are "at least two compelling reasons" why that case "should not be dispositive here": the Sixth Circuit "appeared disinclined to grant plaintiff's request to amend, even if plaintiff had followed the formal procedure for filing a motion," and it "is at odds with its earlier statements in <u>Morse</u> that the liberal standard for amendments is '*particularly appropriate*' in securities fraud cases[.]" (Docket No. 67 at 18-19, emphasis supplied by Plaintiffs).

This Court has no way of knowing the Sixth Circuit's inclination in <u>Louisiana Sch. Employees' Retirement Sys.</u>, but what it does know is that the Sixth Circuit made clear that a "request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition the defendant's motion to dismiss is . . . not a motion to amend.'" 622 F.3d at 484 (citation omitted). As for that case being at "odds" with the earlier decision in <u>Morse</u>, the Sixth Circuit in <u>Louisiana Sch. Employees' Retirement Sys.</u> relied upon <u>PR Diamonds</u> and <u>Miller</u>, the latter of which, as already indicated, found it "notable" that that <u>Morse</u> did not even discuss the PSLRA. In any event, <u>Louisiana Sch. Employees' Retirement Sys.</u> is hardly an outlier, as the Sixth Circuit has repeatedly held that a district court is not required to consider a request made in an opposition brief as a motion to amend. <u>See</u>, <u>e.g.</u>, <u>Desparois v. Perrysburg Exempted Village School Dist.</u>, 455 Fed. App'x 659, 666 (6th Cir. 2012); <u>Willecke v. Kozel</u>, 395 Fed. App'x 160, 167–68 (6th Cir. 2010); <u>Begala v. PNC Bank</u>, 214 F.3d 776, 784 (6th Cir. 2000).

**V.**

6

Both in support of their argument that this Court erred in failing to allow them to amend their complaint based upon the passing request in their reply brief, and their argument that they were prejudiced because of the Court's reliance on the May 18, 2007, letter, Plaintiff contend that they "are not prescient" and that they "clearly had no way of knowing at the time they were briefing the motion to dismiss that the Court would place such great weight on the May 18[th] Letter to dismiss their claim." (Docket No. 67 at 16). Thus, "[i]t would contravene notions of fairness and justice to deny Plaintiffs an opportunity to amend their pleadings to address a letter that they had never seen when drafting their original complaint." (Id. at 10). Under the facts presented in this case, the Court disagrees.

In Benzon v. Morgan Stanley Distributors, Inc., 420 F.3d 598 (6th Cir. 2005), the Sixth Circuit stated that "[w]here a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and Rule 59 inquiries turn on the same factors." Id. at 613. "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" Morse, 290 F.3d at 800 (quoting, Foman v. Davis, 371 U.S. 178, 182 (1962)). However, in the post judgment context, and given that a court must take into consideration the finality of judgments, a court "must be particularly mindful of . . . the movant's explanation for failing to seek leave to amend prior to the entry of judgment." Id.

The Court is unpersuaded by Plaintiffs' argument that they could not have anticipated that the May 18, 2007, letter would play an important role in this Court's ruling. A primary issue is this case was whether BMTI had a reason to represent that it was proper to rely on an mITT. In moving

7

to dismiss, BMTI cited the letter several times, and relied upon its issuance as proof that the FDA had approved BMTI's supplement, including its protocol that used the mITT population. Plaintiffs obviously understood that the letter could be significant because they responded by arguing that "Defendants' claim that the FDA permitted them to use MITT is highly misleading," as the May 2007 letter only permitted BMTI "to analyze additionally an mITT population." (Docket No. 44 at 13). Plaintiffs then argued that an FDA Deficiency Letter refuted any inference that the FDA approved mITT as the primary study population, and that BMTI violated the securities law when it claimed to the contrary.

The letter resurfaced in Defendants' reply when it flatly contended that "[t]he FDA explicitly approved the Company's protocol – with its mITT definition in its unconditional approval letter of May 18, 2007." (Docket No. 50 at 6). Any doubt that this was Defendants' position was certainly eliminated during oral argument when they presented a slide containing the May 18, 2007, letter and stated that it was "an FDA unconditional approval letter," and which corrected the deficiencies cited in a March 30, 2007, conditional approval letter from the FDA. (Docket No. 61 at 23). In response, Plaintiffs specifically addressed the May 18 letter, arguing that the FDA made "a caveat in the acceptance," that being that all subjects should be analyzed as randomized even if no treatment was received and that, while Defendants could analyze an additional group of patients excluded from the ITT due to surgical screening failure, that group should be considered and referred to as a modified ITT population. Plaintiffs went on to argue: "This letter does not resolve the issue in defendants' favor at all. We think it simply supports our position even more." (Id. at 41-42). Tellingly, the last words at the hearing came from Plaintiffs' counsel who characterized the May 18, 2007, letter as being "hotly disputed between the parties." (Id. at 69).

8

More than three and a half months passed between oral argument and this Court's ruling and final judgment, and ten and a half months passed between the filing of the motion to dismiss and the entry of judgment in Defendants' favor, yet during that entire period Plaintiffs never formally moved to amend their complaint. It was only until almost a month after this Court entered its judgment and expressed its opinion about the effects of the letter that Plaintiffs notified the Court that they were prejudiced by the May 18, 2007, letter, and proposed amending the complaint. In the Court's opinion Plaintiffs acted with undue delay.

In so concluding, the Court recognizes that delay alone will ordinarily does not justify denial of a motion for leave to amend, but "[a]t some point . . . will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial', placing an unfair burden on the opposing party." Morse, 290 F.3d at 800. Moreover, "[w]hen amendment is sought at a late stage in the litigation there is an increased burden to show justification for failing to move earlier." Wade v. Knoxville Util. Bd., 259 F.3d 452, 459 (6th Cir. 2001). Plaintiffs have not shown such a justification, a fact that is only underscored by Plaintiffs' request to amend the complaint with statements from Dr. Richard A. Guarino – the very expert Plaintiffs relied upon in formulating their amended complaint filed more than a year before the entry of final judgment – to the effect that the May 18, 2007, letter was not actually an approval letter.

Additionally, allowing amendment at this time would be prejudicial. No doubt Defendants spent significant time and resources in defending this case, and while Defendants would not be required to start from scratch in addressing the amended complaint, they would have to gear up in a case they thought had been put to rest at the trial level. Plaintiffs had ample opportunity and plenty of time to make their case and to argue about the import of the May 28, 2007, letter long before

9

judgment was entered in this case.

In sum, the Court finds that refusing to allow Plaintiffs to amend their complaint would not work a manifest injustice.  Effectively, Plaintiffs have attempted to "sidestep the narrow ground for obtaining post-judgment relief under Rules 59 and 60," but a plaintiff cannot "use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision." Leisure Caiar v. U.S. Fish and Wildlife Serv., 616 F.3d 612 (6th Cir. 2010) (citation omitted).

**VI.**

Based upon the foregoing, Plaintiffs' Motion to Alter or Amend the Order and Judgment of Dismissal With Prejudice will be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

10
